IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRED E. LUTZEIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:14-cv-00183-RLW |
| vs. ) | |
| ) | |
| CITIGROUP INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 79) and Plaintiff's Second Motion to Compel Discovery (ECF No. 88). These matters are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff contends he was a whistleblower who was terminated by Defendants in violation of the Sarbanes-Oxley ("SOX") Act and the Dodd Frank Act, as well as claims for violation of the Missouri public policy exception to wrongful discharge, and for age discrimination in violation of the Missouri Human Rights Act. Plaintiff alleges that he was employed as a director in the Internal Audit Group ("IA Group") in Citigroup Management Corp.'s ("CMC") offices in O'Fallon, Missouri from February 27, 2012 to February 25, 2013. On February 25, 2013, Plaintiff's employment with CMC was terminated, effective April 26, 2013. Defendants claim that Plaintiff was terminated as part of a global reorganization of the IA Group and based upon the location of his position and his "relatively brief" tenure at CMC. (ECF No. 87 at 3).

## LEGAL STANDARD

1

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). The Federal rules further provide for limits on discovery requests. Specifically,

> court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii); Halbach v. Great-W. Life & Annuity Ins. Co., No. 4:05CV02399 ERW, 2007 WL 2702651, at *1 (E.D. Mo. Sept. 12, 2007). Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery.

## DISCUSSION

### I. Plaintiff's First Motion to Compel

#### A. General Objections

Plaintiff contends that the Court should overrule Defendants' general, boilerplate objections. In response, Defendant argues that (1) Plaintiff never addressed this issue during their meet and confer, (2) Defendants agreed to produce documents for the requests for which they lodged only a general objection, and (3) Plaintiff also incorporated his general objections into each and every request, as Defendants did. (ECF No. 87 at 7).

2

The Court will overrule Defendants' general objections. *See Kooima v. Zacklift Intern. Inc.*, 209 F.R.D. 444, 446 (D.S.D.2002)("[B]oilerplate objections are unacceptable."). Defendants have stated that they have not withheld any documents based upon general, boilerplate objections. (ECF No. 87 at 6). Nevertheless, the Court orders Defendants to withdraw their general objections (except for privilege) and respond to Plaintiff's discovery requests accordingly.

### B. Specific Objections

1. Request No. 1: Plaintiff's role with LOIS/COSMOS

Plaintiff notes that Defendants objected to producing documents relating to Plaintiff's role, responsibilities and communications in connection with the LOIS/COSMOS audit. (ECF No. 80 at 5). Defendants contend that they have produced responsive, non-privileged documents and will continue to do so. (ECF No. 87 at 10). They further state that this issue was not discussed in-depth during the October 16, 2014 meet and confer. The Court orders Defendants to continue to produce documents in accordance with Rule 34.

2. Request No. 2(a)-(i): Documents Relating to Plaintiff's Employment and Termination

Plaintiff seeks documents related to his employment with CMC and his termination, including (i) the evaluation(s) of Plaintiff's job performance; (ii) the selection of Plaintiff to attend Citi's executive management training and/or leadership development program(s); (iii) the benefits and compensation paid to Plaintiff during such employment; (iv) any coaching or disciplinary actions taken with respect to Plaintiff during such employment; (v) the personnel file maintained with respect to Plaintiff; (vi) the personnel policies and/or handbooks in effect during Plaintiff's employment; (vii) the severance policies and procedures in effect during Plaintiff's employment, (viii) the reduction in force policies and procedures in effect during Plaintiff's

3

employment, and (ix) the alleged elimination of Plaintiff's position of employment. (ECF No. 80 at 8). Plaintiff claims this information is relevant to his claims as to whether he was meeting his employer's reasonable expectations, whether he was retaliated against and lost wages, and whether Plaintiff was terminated as part of a reduction in force ("RIF").

During the October 16, 2014 call, Defendants contend that they agreed to produce documents responsive to Request No. 2. (ECF No. 87 at 11-12). Defendants, however, stated that Plaintiff was not selected for the "Executive Management Training Program" (see Request No. 2(b)) but Defendants agreed to produce documents relating to the program for which Plaintiff was selected. With respect to Requests Nos. 2(g) to 2(i), Defendants state that they offered to produce documents sufficient to show Citi's policies in effect during Plaintiff's employment. (ECF No. 87 at 12).

The Court holds that Defendants should produce documents in accordance with their October 16, 2014 agreement with Plaintiff. In addition, Defendants shall produce documents related to Plaintiff's employment, including the training program attended by Plaintiff and Citi's policies in effect during Plaintiff's employment.

3. Request Nos. 3(a)-(s) and 4: Documents Relating to Plaintiff's Termination

Plaintiff seeks documents related to the development and implementation of the Organizational Design principles with respect to Defendants' alleged RIF in Citi's Global IA Group and/or function, including the age of all IA employees worldwide. (ECF No. 80 at 8). Plaintiff contends the sample size suggested by Defendants (the IA Group employees of Defendants' U.S. mortgage business) only contains 32 employees and is too small to be a proper comparator. (ECF No. 80 at 8-10).

4

Defendants state that they agreed during the October 16, 2014 conference to produce documents responsive to these requests. (ECF No. 87 at 12). Defendants contend that they offered to provide information about the ages and title of IA Group employees of Defendants' U.S. mortgage business (the subgroup to which Plaintiff was assigned) during Plaintiff's employment. (*Id.*)

The Court holds that Defendants shall produce information related to the IA Group employees of Defendants' U.S. mortgage business during Plaintiff's employment, including the ages and title of the members thereof. Plaintiff has failed to demonstrate how employees in other groups, during other periods, are relevant to his claim. Further, the Court finds that the sample size of 32 is sufficiently large to evaluate his claims. If, after review of Defendants' production, Plaintiff later feels that this sample size is insufficient, he can resubmit this request for consideration.

4. Request No. 5(a)-(g): Documents Relating to Plaintiff's Attempt to Find Employment with Defendants Following Termination

Plaintiff seeks documents consisting of and/or reflecting Plaintiff's applications for employment with Defendants following his termination. (ECF No. 80 at 12-13). Plaintiff claims this information is important to show he mitigated his losses. Defendants state Plaintiff did not raise this issue during their October 16, 2014 meet and confer call. Further, Defendants state that they have agreed to produce responsive, non-privileged documents in their possession, custody, or control. (ECF No. 87 at 10).[1] According to Defendants' representations, this issue is moot

---

[1] Plaintiff does not address this alleged agreement in his Reply.

5

pursuant to the agreement of the parties.² The Court, therefore, orders Defendants to produce documents as agreed and to produce the documents in accordance with Rule 34.

     5. Request Nos. 15, 16, and 17: Job Descriptions for Three Identified Employees

Plaintiff requests the job descriptions of Shelly Rayford and Steve Krause (the two other similarly situated C-15 level directors in IA) as well as for Defendant Champney. (ECF No. 80 at 13-16). It does not appear that Defendants responded to this in their opposition. (ECF No. 87, passim).³ Therefore, the Court grants Plaintiff's Motion with respect to Request Nos. 15, 16, and 17.

     6. Request No. 19: Correspondence between Steve Champney and Sanjiv Das Regarding Plaintiff

Plaintiff contends that the correspondence between Champney and Sanjiv Das concerning Plaintiff is relevant to his allegations that: (i) Mr. Das, CitiMortgage's former CEO, told Champney that the LOIS/COSMOS audit should stop, and (ii) Plaintiff's termination was causally related to: (a) Plaintiff's work on the audit, (b) Plaintiff's reporting of concerns about potential SOX violations discovered pursuant to this audit to Champney; (c) Plaintiff's scheduled meeting with Mr. Das and other executives to discuss such concerns only days before Plaintiff was fired, and (d) the potential embarrassment and/or other negative consequences that would be caused by reason of the audit. (ECF No. 80 at 18-19). Defendants contend that this issue was not discussed during the October 16, 2014 meet and confer. (ECF No. 87 at 11). Defendants maintain that they agreed to produce documents responsive to this request. The Court orders

---

² The Court notes that Plaintiff did not address this or any specific document request in his Reply. The Court, therefore, is left with Defendants' representations in their opposition as the last word in this matter and that this issue has been resolved. The Court further admonishes the parties to abide by the meet and confer process so that issues that have been resolved (or that could be resolved) do not unnecessarily take up the Court's time and resources.

³ The Court notes that Defendants offered to produce this information in response to Request Nos. 22 and 23.

Defendants to produce documents as agreed and to produce the documents in accordance with Rule 34. *See also* footnote 2.

   7. Request No. 20: The Consent Orders

Plaintiff complains that Defendants only offered to produce the two consent orders issued prior to Plaintiff's employment. (ECF No. 80 at 25). Defendants state that they offered to produce the two consent orders entered into prior to Plaintiff's employment and Defendants are not aware of any other consent orders that are relevant to this case. (ECF No. 87 at 15). Based upon Defendants' representation that there are only two relevant consent orders, the Court orders Defendants to produce those two consent orders. If Plaintiff becomes aware of other relevant consent orders, Plaintiff shall specifically request those consent orders from Defendants.[4]

   8. Request Nos. 21 and 58: Lisa Greer Employment Information

Plaintiff alleges that he was replaced with a younger, less qualified employee, Lisa Greer. (ECF No. 80 at 27). Plaintiff requested Defendants produce documents related to Ms. Greer's employment with Defendants, including (i) her job descriptions, (ii) her applications for employment with Defendants, (iii) her performance evaluations, (iv) her compensation and benefits, (v) her disciplinary and/or coaching record, and (vi) the manner of her separation from employment. (*Id.*) During the October 1, 2014 telephone call, Defendants contend that they agreed to produce documents related to Ms. Greer's employment with CMC for the period of Plaintiff's employment (February 2012 through April 2013). (ECF No. 87 at 15). Defendants state that Plaintiff has not identified any basis for requesting Ms. Greer's confidential personal information outside of the dates of Plaintiff's employment.

---

[4] As discussed later, the Court is ordering that "consent order" be added to the list of search terms for Defendants to search their records.

7

The Court finds that, given Plaintiff's allegation that he was replaced by Ms. Greer, Ms. Greer's employment information might be relevant outside of the dates of Plaintiff's employment, particularly to demonstrate her qualification for her position. The Court, therefore, orders Defendants to produce Ms. Greer's employment information for the last 5 years.

> 9. Request Nos. 22-23: Performance Reviews/Evaluations, Compensation and Benefits Paid to Employees in Defendants' IA Group

Plaintiff contends that employees retained in Defendants' IA Group following Defendants' RIF are potential comparators and, therefore, their employment information (including benefits, performance, and compensation) are reasonably calculated to lead to the discovery of admissible evidence. (ECF No. 80 at 17). Likewise, to the extent that the IA Group members' performance, compensation and benefits were used to determine whether employees were terminated pursuant to the RIF, then that information is relevant and discoverable. (ECF No. 80 at 17-18).

Defendants note that during the October 16, 2014 call, Plaintiff's counsel stated that he was not challenging Defendants' objection to Request No. 22. (ECF No. 87 at 13). Defendant further argues that Plaintiff has articulated no basis for receiving information responsive to this "overbroad and extremely burdensome request." (ECF No. 87 at 14). Defendants also state that Plaintiff agreed to provide a proposal for Request 23, but failed to do so prior to filing this Motion. With respect to Request Nos. 22 and 23, Defendant offers to produce non-privileged documents that are responsive to these requests for the period of Plaintiff's employment for "the only four individuals who arguably could have any relevance to Plaintiff's claim: Steve Krause and Shellie Rayford (the only two other C15-level Directors in the U.S. mortgage subgroup), Lisa Greer (Plaintiff's alleged 'replacement'), and Defendant Steve Champney." (ECF No. 87 at 14).

8

The Court believes that Plaintiff's request for information related to the entire IA Group is overbroad because they are not all proper comparators for Plaintiff. The Court, however, orders Defendants to provide documents responsive to Plaintiff's requests for the last five (5) years for Steve Krause, Shellie Rayford, Lisa Greer, and Steve Champney. If, after receiving this information, Plaintiff feels that additional information is necessary, Plaintiff can revisit this issue with the Court.

10. Request No. 26-27: Documents Relating to Submissions to OSHA and the MCHR

Plaintiff seeks all documents related to his July 24, 2013 complaint to OSHA and his August 19, 2013 Charge of Discrimination filed with the MCHR and/or EEOC. (ECF No. 80 at 23-24). Defendants note that they raised no specific objection to producing documents responsive to these requests, that these requests were not raised during the October 16, 2014 meet and confer, and that Defendants agreed to produce responsive, non-privileged documents. (ECF No. 87 at 11). The Court orders Defendants to produce documents pursuant to their agreement. *See also* footnote 2.

11. Request Nos. 6, 7, 28-39, 45, 53-57: Documents Concerning the LOIS COSMOS Software Project and Audit

Plaintiff argues that the LOIS/COSMOS audit revealed, among other things, the failure and/or other violations of Defendants' internal controls and procedures designed to provide accurate accounting and financial reporting and to ensure that appropriate authorizations are obtained at escalating levels for the use of corporate funds, including Citi's Project Expenditure Proposal Policy. (ECF No. 80 at 20). Plaintiff requested Defendants produce documents and correspondence related to: (a) the projected costs of the LOIS/COSMOS software; (b) the actual costs of the LOIS/COSMOS software; (c) the budgets approved by any of the Citi Defendants with respect to the LOIS/COSMOS software; and (d) Citi's Project Expenditure Proposal Policy.

9

(ECF No. 80 at 21). Plaintiff contends that these documents are important to demonstrate that he had both a subjective and objective belief that he communicated to Defendant Champney failures and/or violations of Defendants' internal controls and PEP policy that constituted protected conduct within the meaning of SOX's anti-retaliation provisions. *See Wiest v. Lynch*, 710 F.3d 121, 134 (3d Cir. 2013)(the employee must have both a subjective and an objective belief that the conduct that is the subject of the communication relates to an existing or prospective violation of one of the federal laws referenced in Section 806 of SOX).

Defendants argue that Plaintiff's requests should be limited to those documents necessary to prove his subjective and objective reasonable belief relating to his protected whistleblowing activity. (ECF No. 87 at 17). Defendants contend that Plaintiff does not need to prove an underlying securities fraud, only that he had a subjective and reasonably objective belief that there was securities fraud. Defendants contend that they have already agreed to produce documents related to the audits of LOIS/COSMOS. (ECF No. 87 at 18). Defendants stand by their objections to Request No. 53 because it seeks documents related to non-LOIS and COSMOS capitalized software costs, regardless of the Citi-related entity that incurred those costs and regardless of whether Plaintiff would have seen them. Defendants contend Request No. 54 is overboard. With respect to Requests Nos. 55-57, which seek communications with various regulators relating to capitalized software costs since January 2008, Defendants state that they agreed during the October 16, 2014 meet and confer call to produce documents to the extent that they related to the LOIS-COSMOS audit, subject to privileges and whether Plaintiff saw them or not.[5] Finally, Defendants offer to provide non-privileged communications relating to the completion of the LOIS-COSMOS audit. Defendants have produced responsive documents in

---

[5] Defendants also contend that Plaintiff's challenge to any assert to the bank examiner's privilege is premature. (ECF No. 87 at 18, n.2).

10

the files of the custodians, including communications or reports on the completion of the audit. (ECF No. 87 at 16-17).

The Court finds that Plaintiff has demonstrated that the requested discovery of LOIS/COSMOS information is reasonably calculated to lead to the discovery of admissible evidence. Under Defendants' proposal, Defendants would determine what LOIS/COSMOS information Plaintiff needs to prove his case. The Court, however, holds that the requested information is reasonably related to Plaintiff's whistleblower/retaliation claim and necessary to aid him in proving his case. The Court orders Defendant to produce documents related to LOIS/COSMOS that are responsive to these requests. Nevertheless, to the extent that these requests seek documents that are related to expenditures for other (non-LOIS/COSMOS) software costs, etc., the Court finds that requested information is not reasonably relevant to the discovery of admissible evidence and denies Plaintiff's Motion to Compel such non-LOIS/COSMOS documents.

12. Request Nos. 48-50: The Termination or Resignation of Three Citi Executives

Plaintiff seeks all documents and communications relating to the resignation of three Citi executives, Sanjiv Das (former CEO of CitiMortgage), Scott Pankoff (former CIO of CitiMortgage), and Mark Danahy (former Executive Vice President of Sales and CMO of CitiMortgage). (ECF No. 80 at 26). Plaintiff alleges that "[u]pon information and belief" the termination of these executives was related to the violations and mismanagement that Plaintiff reported to Champney pursuant to the LOIS/COSMOS audit.

Defendants argue that Plaintiff's requests are overbroad because they are based upon Plaintiff's mistaken belief that he must prove an actual violation (not just his reasonable belief

that a violation occurred) and because the requests are not limited to documents concerning the LOIS/COSMOS audits.

The Court believes that Plaintiff's requests are overbroad. Defendants shall produce any documents related to the resignations or terminations of these executives, only to the extent that such documents relate to the LOIS/COSMOS audits and/or Plaintiff.

13. Privilege Log

Plaintiff contends that he has requested that Defendants produce a privilege log on at least two occasions, but Defendants has refused to do so. (ECF No. 80 at 29-30). Defendants contend that, "[i]n the experience of Defendants' counsel," it is "common practice" to produce a privilege log after the parties have produced non-privileged documents. (ECF No. 87 at 19). Defendants claim that they do not want to "divert attention from the task of production." The Court orders Defendants to provide a privilege log within sixty (60) days.

14. ESI Search for Additional Custodians

Plaintiff asks this Court to order Defendants to broaden the search terms of their ESI search to include the following additional custodians: Michael Corbat (CEO of Citigroup), Shelly Rayford (C-15 level Director in the IA Group), Brian Leach (Defendants' Head of Franchise Risk and Strategy), Joan Naumann (Senior Vice President of Fulfillment), Eugene McQuade (CEO of Citibank), Paul Ince (CFO of CitiMortgage, Inc.), and Martha Merkson (C13 Audit Manager). (ECF No. 80 at 31-33).

Defendants note that this issue was not raised during the October 16, 2014 meet and confer call. (ECF No. 87 at 20). Defendants, however, agree to add two additional custodians, Steve Towner and Mason Bellairs. (ECF No. 87 at 21). Defendants also have collected documents from Martha Merkson and Shellie Rayford. Defendants maintain that Plaintiff's request to add

additional custodians should be denied because it will not yield admissible evidence. (ECF No. 87 at 20). Defendants further claim that Plaintiff has failed to show that high-level executives (Michael Corbat, Paul Ince, and Eugene McQuade) have unique or personal knowledge of the subject matter. Defendants argue that Plaintiff does not identify any specific information that these three executive may have and that requesting their files is purely harassment. (ECF No. 87 at 22). Finally, Defendants agree to provide information from Mr. Leach and Mr. Naumann regarding Plaintiff's attempts to obtain employment if Plaintiff provides the dates of his interviews. (ECF No. 87 at 22).

The Court orders Defendants to add as additional custodians (to the extent that they have not already been named custodians) Steve Towner, Mason Bellairs, Martha Merkson, Shellie Rayford, Brian Leach, and Joan Naumann. The Court denies, without prejudice Plaintiff's request to add Michael Corbat, Paul Ince, and Eugene McQuade as custodians. At this stage of the litigation, Plaintiff has not satisfied his burden to show that these high level executives have unique or personal knowledge of the subject matter that warrants their information. *See Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2011 WL 1131129, at *7 (W.D. Mo. Mar. 28, 2011)(citing the "apex deposition doctrine").

15. ESI Search Using Additional Search Terms

Plaintiff asks the Court to order Defendants to add five categories of search terms. Plaintiff asks the Court to add (1) "executive training" and/or "leadership development training program", (2) "PEP" and/or "program expenditure proposal" and/or "internal control", (3) "OCC," "office of comptroller of currency," "FRB," "federal reserve board," and/or "consent order", (4) "insufficient assurance", and (5) "whistleblower," "retaliate," "retaliation," "SOX," "Sarbanes Oxley," and/or "Dodd Frank."

13

Defendants claim that the new categories of search terms are so common and generic that they will return a significant volume of irrelevant documents that it is not sufficient to justify the additional burden. Defendants maintain that using the search protocol for "Fred," "Lutzeier," "LOIS," "COSMOS," and "Champney" would produce all of the relevant documents. Defendants claim that adding these additional search terms would produce an additional 555,909 documents and, therefore, the burden "greatly outweighs the likelihood that these searches will yield additional documents not already captured by Defendants' search protocol." (ECF No. 87 at 23 (citing Fed.R.Civ.P. 26(b)(2)(c)(iii)).

The Court agrees that the majority of the search terms suggested by Plaintiff are too generic and are likely to produce a large number of documents that are irrelevant to this case. Further, the Court finds that the current search criteria adequately ensures that the proper documents that are relevant to Plaintiff's causes of action are produced. The Court, therefore, denies Plaintiff's request to additional search criteria, except for the phrase "consent order" because there appears to be some confusion as to whether other consent orders exist that are relevant to this case. *See* discussion regarding Request No. 20.

## II. Plaintiff's Second Motion to Compel

Plaintiff complains that Defendants have produced in excess of 46,217 documents without providing any indication as to which documents are responsive to which of Plaintiff's fifty-eight (58) enumerated requests for production.[6] (ECF No. 94 at 1). Plaintiff describes this as a "document dump" that fails to comply with Fed.R.Civ.P. 34(b). (ECF No. 94 at 2). Plaintiff argues that Defendants have not produced documents to correspond with his document requests, nor has Plaintiff produced documents as they were ordinarily kept in the usual course of

---

[6] Defendants repeatedly state there are 115 requests, including subparts. *See, e.g.*, ECF No. 93 at 4.

Defendants' business. (ECF No. 94 at 4). Plaintiff complains that this makes it difficult for him to determine whether Defendants have responded to his requests. Plaintiff relies on *Venture Corp. Ltd. v. Barrett*, No. 5:13-CV-03384-PSG, 2014 WL 5305575, at *3 (N.D. Cal. Oct. 16, 2014) for the proposition that Defendants must "(1) either organize and label each document it has produced ***or*** it shall provide custodial and other organizational information along the lines outlined above ***and*** (2) produce load files for its production containing searchable text and metadata." *See* ECF No. 94 at 5.

Defendants do not dispute that they did not organize and label their production. Defendants argue that the ESI agreement dictates the method of production. Defendants further claim that, even if Rule 34(b)(2)(E) controls, Defendants have complied with its requirements. (ECF No. 93 at 2). Defendants note that their document production is fully searchable, which negates any need to organize the production. Specifically, Defendants contend that their production is "fully text-searchable and contain[s] metadata permitting Plaintiff to identify, among other things, the custodians of the document, recipients, date, and other key information." (ECF No. 93 at 1).

The Court finds that the method of Defendants' production complies with both the ESI agreement and with Rule 34. Both parties rely on *Venture Corp. Ltd. v. Barrett*, and the Court holds that Defendants have complied with the requirements outlined there. Specifically, Defendants represent that their production is fully searchable, including the custodian and recipients of all emails. Thus, the Court finds that Defendants' production is in a reasonably usable form or forms and/or the production is searchable, sortable and paired with relevant metadata. *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, No. 12-CV-02834-WYD-MJW, 2014 WL 2118585, at *6 (D. Colo. May 21, 2014)("Rule 34(b)(2)(E)(ii) trumps specific

15

instructions in discovery requests such that 'even if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata ... because the production is in usable form, e.g., electronically searchable and paired with essential metadata.'")(internal citation omitted). Even though Defendants may not have produced the documents as kept in the normal course of business or according to the custodian, the records are easily sorted according to these fields and, therefore, their production is compliant with Rule 34. Therefore, Plaintiff's Second Motion to Compel is denied.

Further, the parties each claim that the other has breached the ESI agreement through their/his document production. As previously discussed (ECF No. 105), this issue is not currently before the Court. The Court, however, orders both parties to use their best efforts to comply with the ESI agreement. If a party fails to produce documents that comply with the ESI agreement, the other party must first give the producing party an opportunity to correct the document production before seeking Court intervention.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery (ECF No. 79) is **DENIED**, in part, and **GRANTED**, in part, in accordance with the discussion outlined above. The Court orders Defendants to supplement their document production within twenty (20) days, as outlined above, and to provide Plaintiff with a privilege log within sixty (60) days.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Compel Discovery (ECF No. 88) is **DENIED**.

Dated this 2nd day of February, 2015.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**